**19-cv-3911 (VSB)**
**(Administratively Consolidated)**
**This document applies to all Administratively Consolidated Appeals**

# United States District Court

*for the*

# Southern District of New York

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯◆⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

FAIRFIELD SENTRY LIMITED (IN LIQUIDATION), acting by and through the Foreign Representatives thereof, KENNETH KRYS and GREIG MITCHELL, solely in their capacities as Foreign Representatives and Liquidators thereof,

*Plaintiffs-Appellants,*

v.

CITIBANK NA LONDON,

*Defendant-Appellee.*

_____

*On Appeal from the United States Bankruptcy*
*Court for the Southern District of New York*

## PLAINTIFFS-APPELLANTS' REPLY BRIEF

SELENDY & GAY PLLC
DAVID ELSBERG
CAITLIN J. HALLIGAN
ANDREW R. DUNLAP
LENA KONANOVA
JORDAN GARMAN
1290 Avenue of the Americas
New York, New York 10104
(212) 390-9000
delsberg@selendygay.com
challigan@selendygay.com
adunlap@selendygay.com
lkonanova@selendygay.com
jgarman@selendygay.com

BROWN RUDNICK LLP
DAVID J. MOLTON
MAREK P. KRZYZOWSKI
Seven Times Square
New York, New York 10036
(212) 209-4800
dmolton@brownrudnick.com
mkrzyzowski@brownrudnick.com

*Attorneys for the Plaintiffs-Appellants Foreign Representatives*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................ 1

ARGUMENT ......................................................................................... 5

I.  *WEAVERING II* AUTHORIZES THE LIQUIDATORS'
    AMENDED COMMON LAW CLAIMS ........................................ 5

    A.  The Bankruptcy Court's Finality Holding—That Net
        Asset Values Are Always Binding—Violates
        *Weavering II*'s Rule That Values Inflated By Internal
        Fraud Do Not Bind Anyone ................................................... 6

        1.  Under *Weavering II*, Net Asset Values Inflated
            By Internal Fraud Do Not Bind Anyone ........................ 7

        2.  *Weavering II* Applies To Fraud Or Dishonesty By
            A Funds' Agent—As Here, By Citco .............................. 9

    B.  The Bankruptcy Court's Alternative Bad Faith
        Holding—That Liquidators Cannot Recover Payments
        Inflated By An Agent's Fraud—Violates *Weavering II*'s
        Rule That Redeeming Shareholders Must Return Such
        Overpayments To Liquidators ............................................. 12

    C.  Even If *Weavering II* Did Not Control, The Liquidators
        May Pursue Their Common Law Claims Because The
        Bankruptcy Court Misapplied *Migani* And Its Progeny ...... 14

        1.  The Bankruptcy Court's Finality Holding Was
            Erroneous, Because *Migani* Did Not Create A
            Common Law Rule Displacing The Articles' Plain
            Language ..................................................................... 15

        2.  The Bankruptcy Court's Alternative Bad Faith
            Holding Was Erroneous, Because The Articles
            Expressly Provide That Bad Faith Net Asset
            Values Are Not Binding ................................................ 16

II.    *WEAVERING II* AUTHORIZES THE LIQUIDATORS'
AMENDED CONTRACT CLAIMS ................................................. 18

III.   DEFENDANTS-APPELLEES' REMAINING ARGUMENTS
ARE MERITLESS ........................................................................ 20

      A.    Defendants-Appellees Did Not Give Good
Consideration ........................................................................ 20

      B.    The BVI Business Companies Act Does Not Bar The
Liquidators' Claims .............................................................. 24

      C.    Collateral Estoppel Does Not Bar Litigation Of Citco's
Bad Faith Here, As That Issue Was Not Previously
Litigated Or Decided ............................................................ 27

IV.   THIS COURT SHOULD REVERSE THE BANKRUPTCY
COURT IN FULL ........................................................................ 31

CONCLUSION ......................................................................................... 31

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re Adelphia Recovery Tr.*,
    634 F.3d 678 (2d Cir. 2011) ............................................................... 12

*Ball v. A.O. Smith Corp.*,
    451 F.3d 66 (2d Cir. 2006) ................................................................ 28

*Cal. Cmtys. Against Toxics v. Envtl. Prot. Agency*,
    928 F.3d 1041 (D.C. Cir. 2019) ........................................................ 29

*Chabad Lubavitch of Litchfield Cty. v. Litchfield Historic Dist. Comm'n*,
    768 F.3d 183 (2d Cir. 2014) .............................................................. 28

*County of Suffolk v. Stone & Webster Eng'g Corp.*,
    106 F.3d 1112 (2d Cir. 1997) ............................................................ 12

*In re Fairfield Sentry Ltd.*,
    596 B.R. 275 (Bankr. S.D.N.Y. 2018) ..............12, 15, 19, 24, 27, 28, 29

*Homeward Residential, Inc. v. Sand Canyon Corp.*,
    2014 WL 12791757 (S.D.N.Y. Mar. 31, 2014) ................................... 30

*Laguna Hermosa Corp. v. United States*,
    671 F.3d 1284 (Fed. Cir. 2012) ......................................................... 28

*Leather v. Eyck*,
    180 F.3d 420 (2d Cir. 1999) .............................................................. 29

*Petro-Hunt, L.L.C. v. United States*,
    365 F.3d 385 (5th Cir. 2004) ............................................................. 28

*Reed Constr. Data Inc. v. McGraw-Hill Cos.*,
    49 F. Supp. 3d 385 (S.D.N.Y. 2014), ................................................. 12

## International Cases

*ABN AMRO Fund Servs. (Isle of Man) 24 Nominees Ltd. v. Krys,*
  Nos. BVIHCMAP: 11-16, 23-28 of 2016 ...................................... 24, 28

*Att'y Gen. of Belize v. Belize Telecom Ltd.*
  [2009] UKPC 10 ......................................................... 18, 19

*Bainbridge v. Bainbridge*
  [2016] EWHC 898 (Ch) ...................................................... 22

*DD Growth Premium 2X Fund (In Official Liquidation) v. RMF*
  *Mkt. Neutral Strategies (Master) Ltd.*
  [2017] UKPC 36 .............................................................. 15

*Fairfield Sentry Ltd. (In Liquidation) v. Bank Julius Baer & Co.,*
  Nos. BVIHC (COM) 30/2010, et al. (Sept. 16, 2011) ......................... 23

*Fairfield Sentry Ltd. (In Liquidation) v. Bank Julius Baer & Co.,*
  Nos. BVIHC (COM) 30/2010, et al. (Apr. 20, 2011) .......................... 26

*Fairfield Sentry Ltd. (In Liquidation) v. Migani*
  [2014] UKPC 9 ..................................................... 15, 21, 22

*Gamatronic (UK) Ltd. v. Hamilton*
  [2016] EWHC 2225 (QB) ...................................................... 23

*Hawksford Trs. Jersey Ltd. v. Stella Glob. UK Ltd.*
  [2012] EWCA 55 Civ 55 ...................................................... 10

*HIH Cas. & Gen. Ins. v. Chase Manhattan Bank*
  [2003] UKHL 6 ............................................................ 7, 17

*Jetivia SA v. Bilta (UK) Ltd. (in Liquidation)*
  [2015] UKSC 23 ............................................................. 10

*Mahoney v. Purnell*
  [1996] 3 All ER 61 ......................................................... 22

*Marks & Spencer plc v. BNP Paribas Sec. Servs. Tr. Co. (Jersey)*
  [2015] UKSC 72 .......................................................... 18, 19

*Pearson v. Primeo Fund*
  [2017] UKPC 19 ..................................................................... 15

*Quilvest Fin. Ltd. v. Fairfield Sentry Ltd. (in Liquidation),*
  Nos. HCVAP 2011/041, et al............................................... 21

*S.A. Mar. et Commerciale of Geneva v. Anglo-Iranian Oil Co.*
  [1954] 1 W.L.R. 492 ............................................................ 25

*Salt v. Stratstone Specialist Ltd.*
  [2015] EWCA Civ 745 ......................................................... 22

*Skandinaviska Enskilda Banken AB (Publ) v. Conway (as Joint
  Official Liquidators of Weavering Macro Fixed Income Fund Ltd.)*
  [2019] UKPC 36 .......................................7, 8, 9, 10, 11, 13, 14, 17, 28

*Smith New Court Sec. Ltd. v. Scrimgeour Vickers (Asset Mgmt.) Ltd.*
  [1994] 1 W.L.R. 1271 .......................................................... 22

*Smith New Court Sec. Ltd. v. Scrimgeour Vickers (Asset Mgmt.) Ltd.*
  [1996] UKHL 3....................................................................... 23

*In re Stanford Int'l Bank*
  [2019] UKPC 45 ................................................................... 15

## Federal Statutes

11 U.S.C. § 548(a)(1)(A)............................................................ 20

## International Statutes

BVI Business Companies Act, 2004 § 31 ......................................... 24, 25

BVI Business Companies Act, 2004 § 66 ......................................... 25

BVI Business Companies Act, 2004 § 103 ........................................ 25

BVI Insolvency Act, 2003 § 245 .................................................. 20

BVI Insolvency Act, 2003 § 246 .................................................. 20

International Business Companies Act (Cap. 291) ............................... 27

Ontario Business Corporations Act, 1982 § 19.......................................25

**Other Authorities**

5 Corbin on Contracts § 24.26.................................................................27

Graham Virgo, *Good Consideration Provided by the Defendant*,
   The Principles of the Law of Restitution (3d ed. 2015).....................21

Yedidia Z. Stern, *Corporate Liability for Unauthorized Contracts—*
   *Unification of the Rules of Corporate Representation,*
   9 U. Pa. J. Int'l Bus. L. 649 (1987) ...................................................26

## PRELIMINARY STATEMENT

The Privy Council's intervening decision in *Weavering II* requires reversal.[1]  *Weavering II* held that NAVs inflated by a fund's internal fraud do not bind anyone.  And it held that redeeming shareholders who received overpayments inflated by such fraud have a common law obligation to return them to fund liquidators, so the liquidators can ratably distribute those monies to fund stakeholders.  *Weavering II* is dispositive here, where the Liquidators have sued redeeming shareholders to recover overpayments inflated by the bad faith of the Funds' agent, Citco, for ratable distribution.

In light of *Weavering II*, Defendants-Appellees cannot defend the Bankruptcy Court's Finality Holding—that NAVs determined in bad faith by Citco are binding based on purported common law principles of finality.  They do not contest Citco's authority to determine NAVs, or that the Liquidators have sufficiently alleged Citco acted in bad faith under

---

[1] Unless defined herein, abbreviations and capitalized terms have the same meaning as in the Liquidators' December 10, 2019, Plaintiffs-Appellants' Opening Brief, No. 19-cv-03911 (S.D.N.Y.) Dkt. 22, cited as "Open."  Citations to "Resp." refer to Defendants-Appellees' March 9, 2020 Response Brief, No. 19-cv-03911 (S.D.N.Y.) Dkt. 281.  An alphabetized table of defined terms is included in Reply Addendum A.

BVI law.  Instead, they claim *Weavering II* applies only to injured share-holders and not liquidators, but that is not what the case says; the Privy Council commanded that redeemers must return fraudulently inflated overpayments to liquidators for ratable distribution.  Section I.A.1.  They also suggest that *Weavering II* does not apply because Citco did not control all the Funds' operations, but *Weavering II* turns on whether an agent controlled the "particular function" at issue, and Citco indisputably controlled calculation of the NAVs here.  Section I.A.2.

Under *Weavering II*, Defendants-Appellees also cannot justify the Bankruptcy Court's alternative Bad Faith Holding—that the Liquidators cannot recover redemption payments inflated by the misconduct of the Funds' agent, Citco.  They argue *Weavering II*'s policy requiring return of fraudulently inflated overpayments applied in that case because those liquidators brought statutory claims, while the Liquidators here pursue common law claims.  But they concede the *Weavering II* liquidators sought common law restitution and offer no coherent reason why that same remedy should be applied differently to the Liquidators' claims here.  Section I.B.

Even if *Weavering II* does not apply, Defendants-Appellees barely defend the Finality Holding on its own merits.  They do not contest that *Migani* was based on a reading of the contract—not on common law principles, as the Bankruptcy Court held—or that English and BVI contract law focuses on agreements' plain text.  The most natural reading of the Articles is that bad faith NAVs do not bind anyone.  Section I.C.1.

Defendants-Appellees similarly offer no meaningful defense of the Bad Faith Holding should *Weavering II* not apply.  They do not contest that the Bankruptcy Court erred by looking at only the Directors' good faith—tacitly conceding that the Articles also look to those acting "on behalf of" the Directors, like Citco.  Nor do they debate that English and BVI law focuses on compensating the true victims—here, the non-redeemers, in whose interest the Liquidators act.  Section I.C.2.

As for the Liquidators' Contract Claims, Defendants-Appellees do not contest that those claims should be reinstated if the Court agrees that *Weavering II* applies.  Even if *Weavering II* does not apply, Defendants-Appellees bungle the legal standard for implying a contract term.  The correct standard considers whether a term will make a contract coherent, which the Bankruptcy Court did not do.  To be coherent, the Articles must

allow the Liquidators to claw back overpayments based on bad faith NAVs because the Articles provide that such NAVs are not binding.  Section II.

Defendants-Appellees dive into the Bankruptcy Court's footnotes to scrounge an argument that they gave good consideration.  But their assertion that the ECCA's decision on good consideration remains binding is untrue—*Migani* undid that decision and did not address good consideration where NAVs are *not* binding, as here.  As it is undisputed that English and BVI good consideration law allows recovery only of payments that exceed debts "properly due," the Liquidators may recover overpayments exceeding the true amount of the nearly worthless NAVs.  Section III.A.

From the same footnote, Defendants-Appellees also dredge up the BVI Business Companies Act, 2004, which they assert prevents the Liquidators from disclaiming the Funds' liability for Citco's acts.  But liability for Citco's acts is irrelevant.  The question is whether the NAVs are binding under the Articles, and the BCA does not prevent a company from providing by contract when documents it issues will be binding.  In relevant part, the BCA simply prevents a company from disclaiming that

4

its documents were genuine or issued by someone with authority, which are not issues here.  Section III.B.

Defendants-Appellees also give collateral estoppel a try.  But BVI preclusion law controls here, and they offer no argument under that law. Even if U.S. law governed, collateral estoppel applies only if an issue was actually decided, and Citco's good faith was expressly not decided in the BVI proceedings.   Collateral estoppel does not preclude arguments a party could have raised but did not.  In any event, the Liquidators could not have raised Citco's bad faith in 2011 BVI proceedings based on information they did not receive until 2014.  Section III.C.

The Bankruptcy Court's decision should be reversed.  This reversal will not affect other motions to dismiss.  Section IV.

## ARGUMENT

## I.  *WEAVERING II* AUTHORIZES THE LIQUIDATORS' AMENDED COMMON LAW CLAIMS

*Weavering II* is an intervening Privy Council decision that changed the law and which this Court must apply.  Open. 32–33.  It dismantles the Bankruptcy Court's Finality Holding—that finality principles require enforcing bad faith NAVs—by providing that NAVs inflated through internal fraud, like the NAVs here, are not binding.  It also undoes the

Bankruptcy Court's alternative Bad Faith Holding—that the Liquidators cannot benefit from fraud imputed from Citco to the Funds—by holding that redeeming shareholders must return overpayments inflated by a fund's agent's fraud.  Even if *Weavering II* does not apply here, the Bankruptcy Court's holdings were erroneous because English and BVI law required it to enforce the plain terms of the Articles that bad faith NAVs are not binding.

### A.    The Bankruptcy Court's Finality Holding—That Net Asset Values Are Always Binding—Violates *Weavering II*'s Rule That Values Inflated By Internal Fraud Do Not Bind Anyone

Under *Weavering II*, NAVs determined through internal fraud or dishonesty of a fund agent with actual authority to carry out the relevant function bind no one.  Open. 33–39 & n.11.  Defendants-Appellees concede the key issue that Citco had actual authority to determine the NAVs here, Resp. 35, and do not meaningfully dispute that Citco's determination of the NAVs was internal fraud, Open. 37–38.  Instead, Defendants-Appellees argue that only "injured shareholders" can sue to void fraudulently inflated NAVs, Resp. 29–31, and that Citco was not the "controlling mind" of the Funds, *id.* 31–34.  Both arguments fail.

6

### 1. Under *Weavering II*, Net Asset Values Inflated By Internal Fraud Do Not Bind Anyone

*Weavering II* held that NAVs determined through internal fraud or dishonesty are "not binding on all persons":

> Fraud is something apart. The Board accepts [SEB's] submission that nothing in the contract constituted by the articles purported to permit the directors of the [Weavering fund] to carry out a fraudulent determination of the NAV and that, even if it had, such fraudulent determination could not bind redeeming shareholders. *The Board considers that the dishonest valuation of assets was not made "pursuant to these articles"* and therefore was *not "binding on all persons"* under [the Weavering fund's articles of association].

*Weavering II* ¶ 27 (emphases added). It further held that "a party who wishe[s] to have the NAV avoided [should] bring proceedings to do so." *Id.* ¶ 30.

These holdings are not limited to injured redeeming shareholders. *Contra* Resp. 30. An internal fraud undoes NAVs completely, so they no longer bind anyone. *See HIH Cas. & Gen. Ins. v. Chase Manhattan Bank* [2003] UKHL 6, ¶ 15 ("[F]raud unravels all …. [I]t vitiates … all transactions whatsoever.") ("*HIH*") (quotation marks omitted).

Defendants-Appellees' reading that liquidators may not sue to void fraudulently inflated NAVs makes no sense. Resp. 31. Under

*Weavering II*, if redeeming shareholders are overpaid based on fraudulently or dishonestly inflated NAVs, "[t]he common law … imposes an obligation on [them] to repay the money." *Weavering II* ¶ 80.  Redeemers must repay so liquidators can fairly redistribute those overpayments: "[R]estitution of the money to the assets available for distribution by the liquidators … is necessary to complete the process of undoing the unfair advantage which [redeeming shareholders] obtained at [other stakeholders'] expense." *Id.*  Defendants-Appellees would interpret *Weavering II* as barring the Liquidators from pursuing the very overpayments it requires the Defendants-Appellees to repay.[2]

Defendants-Appellees' related reading that shareholders injured by fraudulently inflated NAVs (not the Liquidators) must sue directly to void such NAVs is also nonsensical.  Resp. 30.  Fraudulently inflated NAVs injure only *non*-redeeming shareholders, whose investments were wrongly paid away to redeemers.  But Defendants-Appellees present no authority that non-redeemers could sue directly in liquidation

---

[2] If *Weavering II* precluded liquidators from voiding NAVs, it could have further distinguished *Migani* on the basis that there a *liquidator* argued the NAV was not binding.  It did not.  *Weavering II* ¶ 24.

proceedings to void NAVs for other shareholders' redemptions.  Instead, the Liquidators act in the interest of all stakeholders to recover money owed the Funds and distribute according to law.  *Weavering II* ¶ 124. Non-redeemers find relief in the Funds' estate, the value of which turns on the Liquidators' recovery of fraudulent overpayments made to redeemers.  Defendants-Appellees' reading of *Weavering II* would leave injured non-redeemers with no practical way of voiding the false NAVs that injured them.[3]  This is not—and cannot be—what the Privy Council held.

### 2.   *Weavering II* Applies To Fraud Or Dishonesty By A Funds' Agent—As Here, By Citco

*Weavering II* held a fund's manager's fraud was internal to the fund where the manager "controlled [the fund] for all purposes relevant to these proceedings."  *Weavering II* ¶ 25.  The fraud here is likewise internal, because Citco controlled the Funds' calculation of the NAVs—the purpose relevant to these proceedings.

Defendants-Appellees assert that, unlike the Weavering fund's manager, Citco did not make "ultimate decisions" regarding the Funds'

---

[3] Fraudulent inducement, Resp. 31, is irrelevant here.  Regardless, the Liquidators act in the interest of non-redeemers injured by Citco's fraud.

investments and payments. Resp. 31–32 & n.30.[4] But English and BVI law focuses on whether an agent controlled the "particular function in question." *Jetivia SA v. Bilta (UK) Ltd. (in Liquidation)* [2015] UKSC 23, ¶ 67 (a company's agent may be its "directing mind and will … for the purpose of performing the particular function in question, without necessarily being its directing mind and will for other purposes").[5] Although the Weavering fund effectively "permitted [its manager] to act as a de facto director" of the fund generally, this broader authority was incidental to the fund giving that agent specific "authority in relation to redemption payments." *Weavering II* ¶ 24.

Defendants-Appellees admit the Funds gave Citco actual authority to calculate the NAVs, Resp. 35; *see* Open. 37—the particular function in question here. They do not dispute that the Liquidators adequately

---

[4] Defendants-Appellees cite allegations that the Funds' directors ultimately suspended NAV calculations and redemptions, Resp. 32 n.30, but so did the Weavering directors, *Weavering II* ¶ 11, and their manger was that fund's "controlling mind."

[5] *See also Hawksford Trs. Jersey Ltd. v. Stella Glob. UK Ltd.* [2012] EWCA Civ 55 ¶ 33 ("'Directing mind and will' …. may include an agent … invested with the necessary authority to manage or control the particular aspect of the company's business to which the issue of liability relates.").

allege Citco's bad faith in calculating the NAVs.  Open. 38.  Nor do they dispute that bad faith is synonymous with fraud and dishonesty under BVI law.  *Id.*  Because the Liquidators allege the "valuations were prepared on a fraudulent basis by [Citco,] to whom the directors had given actual authority to carry out the valuations[,]" the fraud was internal and *Weavering II* applies.  *Weavering II* ¶ 26.

Defendants-Appellees try to analogize Citco to the Weavering fund's administrative agent, Resp. 33–34, but there was "no suggestion [that agent] was complicit in or aware of [the Weavering fund's manager's] fraud," *Weavering II* ¶ 25.  Here, the Liquidators allege Citco fraudulently inflated the NAVs, Am. Compl. (Dkt. 942 at 239–48 (¶¶ 41–70)); Open. 13–17, just like the Weavering fund's manager, *Weavering II* ¶ 5 (manager was "fraudulently inflating the [fund's] net asset value").

Finally, even if only the Directors' good faith mattered for the controlling mind analysis, Resp. 32, it is law of the case—not a "new theory," Resp. 6, 34—"that Citco's bad faith [was] imputed to the Funds,"

11

*Fairfield II*, 596 B.R. at 306 (Dkt. 1743 at 48).[6]  Defendants-Appellees are judicially estopped from arguing otherwise here, as they successfully argued for imputation below, Mot. to Dismiss (Dkt. 960 at 66–67), and cannot fairly switch theories now that *Weavering II* changed the law.  *See In re Adelphia Recovery Tr.*, 634 F.3d 678, 695–96 (2d Cir. 2011); *see also Reed Constr. Data Inc. v. McGraw-Hill Cos.*, 49 F. Supp. 3d 385, 426 n.21 (S.D.N.Y. 2014) (judicial estoppel applies to inconsistent legal positions).

## B. The Bankruptcy Court's Alternative Bad Faith Holding—That Liquidators Cannot Recover Payments Inflated By An Agent's Fraud—Violates *Weavering II*'s Rule That Redeeming Shareholders Must Return Such Overpayments To Liquidators

*Weavering II* held that the common law requires redeeming shareholders who benefit from overpayments based on NAVs inflated by a fund's internal fraud or dishonesty to repay that money to the fund's liquidators, so the liquidators may distribute it to stakeholders.  *Weavering II* ¶ 80.  "[P]ublic policy dictates that the courts should assist liquidators in" discharging this "legal duty."  *Id.* ¶ 124.  Accordingly, the Bankruptcy Court's alternative Bad Faith Holding—that the Liquidators

---

[6] The Liquidators did not appeal this decision, Open. 52 n.18, and a decision unchallenged on appeal is law of the case, *County of Suffolk v. Stone & Webster Eng'g Corp.*, 106 F.3d 1112, 1117 (2d Cir. 1997).

cannot recover redemption payments based on Citco's misconduct—must be reversed.  Open. 39–43.

Defendants-Appellees assert that while this policy applied in *Weavering II* to statutory claims brought by liquidators in the interest of creditors, it does not apply here to common law claims brought by the Liquidators in the interest of the Funds.  Resp. 38–41.  Not so.  Like the Weavering liquidators, the Liquidators here seek the remedy of common law restitution, *see Weavering II* ¶ 76, and that common law recovery will flow to Fund stakeholders, just as statutory recoveries would.  Restitution is just as necessary here as in *Weavering II* to undo the "injustice of [redeeming shareholders] benefitting" from fraudulently inflated overpayments, *id.* ¶ 80, and concerns the same liquidators' duty to recover and ratably distribute those monies, *id.* ¶ 124.  Because the Liquidators seek the same remedy here as in *Weavering II*, the "technical" reasons the Weavering liquidators could seek that remedy are irrelevant.  *Contra* Resp. 39.

Defendants-Appellees also assert *Weavering II* is inapposite because the Liquidators bring separate statutory avoidance claims.  Resp. 40–41.  But *Weavering II*'s policy is based on the non-binding

character of fraudulently or dishonestly valued NAVs, whatever the claim. That policy squarely applies to the Common Law Claims and cannot be ignored because it might also apply to avoidance claims.

Defendants-Appellees further assert the avoidance statute at issue in *Weavering II* did not incorporate common law defenses inconsistent with the statutory insolvency scheme. Resp. 39–40. This is irrelevant to whether the Liquidators can pursue common law restitution here, which they can. That remedy is fully consistent with BVI insolvency law and is "necessary" to undo Defendants-Appellees' unfair advantage. *Weavering II* ¶ 80.

### C. Even If *Weavering II* Did Not Control, The Liquidators May Pursue Their Common Law Claims Because The Bankruptcy Court Misapplied *Migani* And Its Progeny

Even if *Weavering II* did not control (it does), the Bankruptcy Court's Finality Holding was erroneous because it misreads *Migani* as imposing a common law rule of finality in all cases, even bad faith certification. In fact, *Migani* was based on contractual text, and the Articles clearly provide NAVs are not binding if certified in bad faith, regardless of other considerations. Open. 44–46. The court's alternative Bad Faith

14

Holding was erroneous because the parties contracted around any common law presumption to the contary.  *Id.* 50–55.

### 1.   The Bankruptcy Court's Finality Holding Was Erroneous, Because *Migani* Did Not Create A Common Law Rule Displacing The Articles' Plain Language

Defendants barely defend the Bankruptcy Court's Finality Holding. They invoke *Migani* but do not dispute that it was based on the Privy Council's reading of a contract, not on common law, Open. 45–46, or that it did not address Citco's bad faith, Open. 46–47.  While they assert *Migani* is good law that was applied elsewhere, Resp. 23–25,[7] they do not explain how the Bankruptcy Court's reading of *Migani* as imposing common law principles of finality could be correct—and it was not.

---

[7] Defendants-Appellees fail to show their cited cases apply.  They say the *DD Growth* parties conceded the NAVs there were binding because of *Migani*, Resp. 24 n.27, but the Bankruptcy Court should not have treated that concession as a holding, Open. 47 n.14; *see Fairfield II*, 596 B.R. at 296–97 (Dkt. 1743 at 30).  They argue no party in *Pearson v. Primeo Fund*, [2017] UKPC 19, suggested a basis for disturbing the valuations there, Resp. 24–25, but the Liquidators have suggested a basis here—Citco's bad faith.  They cite *In re Stanford International Bank*, Resp. 25, but that case did not refer to *Migani* for a rule that NAVs are binding, only for a discussion of good consideration.  [2019] UKPC 45 ¶ 67.  The *Stanford* agreements entitled redeemers to capital and interest without condition, *id.* ¶¶ 66–67; the Articles here provide NAVs certified in bad faith are not binding, hence redemption payments based on them are not "properly due."  *See Migani* ¶¶ 18–19; *infra* Section III.A.

15

Defendants-Appellees also do not contest that English and BVI law focuses on the text of contracts, Open. 44–45, or that the Bankruptcy Court erred if it ignored the plain text and wrote the "good faith" requirement out of Article 11 for commercial reasonability concerns, Open. 48–49.  They further do not dispute that the Liquidators' interpretation of Article 11 is commercially reasonable.  Open. 49–50.

Defendants-Appellees hardly address the relevant text of Article 11: that only NAVs given in good faith "shall be binding on all parties."  Articles (Dkt. 925-6 § 11(1)).  In passing, they assert Article 11 is silent on the effect of bad faith NAVs and posit that such NAVs can still bind some parties.  Resp. 38.  But Article 11 is not silent.  By providing a condition—good faith—for the NAVs to bind all parties, it necessarily directs that, absent that condition, the NAVS do not bind anyone.

>   **2.     The Bankruptcy Court's Alternative Bad Faith Holding Was Erroneous, Because The Articles Expressly Provide That Bad Faith Net Asset Values Are Not Binding**

Defendants-Appellees do not defend large portions of the Bankruptcy Court's alternative Bad Faith Holding.  They do not contest that the court erred in holding that only the Directors' good faith was relevant, as the Articles also consider the good faith of those acting "on behalf of"

those Directors, like Citco.   Open. 51–52 (citing Articles (Dkt. 925-6 § 11(1))).   They also do not dispute that the Bankruptcy Court ignored the English and BVI policy of identifying and compensating the "true victim" of wrongdoing—here, non-redeeming shareholders.   Open. 52–54.

Defendants-Appellees attempt to justify the Bad Faith Holding on the sole basis that English and BVI law prevents a party from taking advantage of its own breach absent clear language to the contrary. Resp. 37–38.   But the Liquidators are not taking advantage of Citco's conduct for their own benefit; they act on behalf of stakeholders.   And the Liquidators do not argue that the Articles disclaim the Funds' liability for Citco's fraud, *contra* Resp. 38; *cf. HIH* ¶¶ 16, 69; just that the Articles provide when NAVs will be binding.   In any case, Article 11 contains clear language that bad faith NAVs bind no one.   Open. 54–55 & n.19; *Kingate* ¶¶ 160–162.[8]

---

[8] If Defendants-Appellees intended to make this argument in the event *Weavering II* does control, it still fails.   *Weavering II* held internally fraudulent NAVs are not binding regardless of the contractual scheme. *Weavering II* ¶ 27 (even if the articles "permit[ted] the directors … to carry out a fraudulent determination of the NAV …, such a fraudulent determination could not bind redeeming shareholders").

## II.   *WEAVERING II* AUTHORIZES THE LIQUIDATORS' AMENDED CONTRACT CLAIMS

Defendants-Appellees do not contest that, if *Weavering II* allows the Liquidators to recover inflated redemption payments through their Common Law Claims, *see supra* Sections I.A., I.B., then the Court should imply a contractual term into the Articles allowing for such recovery through their Contract Claims.  Open. 57–58.

If *Weavering II* does not apply, while Defendants-Appellees assert the Bankruptcy Court correctly applied the legal standard for implying a contract term set forth in *Attorney General of Belize v. Belize Telecom Ltd.* [2009] UKPC 10 ("*Belize*"), Resp. 42, they do not dispute that *Belize* was displaced by *Marks & Spencer plc v. BNP Paribas Securities Services Trust Co. (Jersey)* [2015] UKSC 72 ("*Marks*").  Open. 58–59; *see Marks* ¶ 31 (relegating *Belize* to "a characteristically inspired discussion rather than authoritative guidance on the law of implied terms").[9]

---

[9] The Liquidators did not "invite" the Bankruptcy Court to apply *Belize*. Resp. 43.  Their expert explained why the court should apply *Marks*: While *Belize* was technically good law in the BVI, "BVI courts would try to avoid conflicting with the later UK Supreme Court decision [*i.e., Marks*]," because "appeals would go to a Privy Council panel … more likely to resemble the later *Marks* panel."  Moss Decl. I (Dkt. 926 ¶ 48 n.6).

18

Defendants-Appellees argue that the *Belize* and *Marks* standards are the same. Resp. 42. Not so. *Belize* looked at what is "conventionally called the intention of the parties," *Belize* ¶¶ 16, 21; *Marks* also asks whether an implied term is obvious or efficient or necessary to give a contract commercial or practical coherence, *Marks* ¶¶ 18, 21, 23; *see* Moss Decl. II (Dkt. 1338 ¶ 82). The Bankruptcy Court erred by failing to consider the commercial or practical coherence of the Articles. *Fairfield II*, 596 B.R. at 301–02 (Dkt. 1743 at 39–40).

To be coherent, the Articles must be read to allow the Liquidators to recover overpayments based on bad faith NAVs on behalf of non-redeemers, because the Articles provide that only good faith NAVs are binding. Open. 58–60. Defendants-Appellees apparently agree the Articles should contain an implied term allowing shareholders injured by bad-faith NAVs to challenge them, Resp. 44, but offer no reason why that term should not extend to liquidators acting in the interest of injured non-redeemers.

Defendants-Appellees worry about "open-ended liability" if the Liquidators can sue. Resp. 42. In fact, NAVs will be binding in all cases when given in good faith, and, when they are not, BVI law imposes a six-

year statute of limitations for restitution claims.  Hare Decl. (Dkt. 925 ¶ 14 & n.4).  The liability for such claims is the same as if injured shareholders could sue directly (as Defendants-Appellees propose) and already exists under BVI and U.S. laws that allow liquidators and trustees, respectively, to avoid fraudulent transfers, *see, e.g.*, BVI Insolvency Act, 2003 §§ 245, 246; 11 U.S.C. § 548(a)(1)(A).  In any event, shareholders' purported uncertainty about their liability does not make the Articles incoherent.

Defendants-Appellees again invoke a common law presumption against parties benefiting from their own wrong, Resp. 44, but ignore that the parties contacted around it, Open. 54–55 & n.19; *Kingate* ¶¶ 160–162; *supra* I.C.2, and do not contest that English and BVI public policy favors identifying and compensating the "true victim[s]" of a wrong—here, non-redeemers.  Open. 52–53.

## III.   DEFENDANTS-APPELLEES' REMAINING ARGUMENTS ARE MERITLESS

### A.   Defendants-Appellees Did Not Give Good Consideration

The ECCA's decision on good consideration in the BVI proceedings is *not* controlling law.  *Contra* Resp. 46.  The ECCA considered the preliminary issues of NAV certificates and good consideration separately.  It

affirmed that the NAVs were not binding, *Quilvest Fin. Ltd. v. Fairfield Sentry Ltd. (in Liquidation)*, Nos. HCVAP 2011/041, et al. (Dkt. 963-2 at 78 (¶ 41)), but separately held the BVI Defendants gave good consideration because they "fully performed all their obligations under the contract" in surrendering their shares, *id.* at 100–01 (¶ 87).

*Migani* undid the ECCA's decision.  The Privy Council considered the "closely related" NAV certificate and good consideration questions "together." *Migani* ¶ 6.  It held NAV transaction documents were "certificates," and thus binding. *Id.* ¶¶ 24–32.  It then held the defendants gave good consideration *because* those certificates were binding—resulting in a debt properly due, *id.* ¶¶ 18–19, 24; *see* Virgo at 190 (leading English law treatise confirming *Migani* affirmatively rendered good consideration determination).  *Migani*'s controlling good consideration decision *did not* address whether the BVI Defendants gave good consideration if NAVs are not binding, *i.e.*, if they were given in bad faith.[10]

---

[10] The ECCA's good consideration decision is also no basis for collateral estoppel, Resp. 46, because it was not a final judgment on the merits.  *See infra* Section III.C.

Defendants-Appellees do not contest that the doctrine of good consideration allows one to recover a payment only to the extent it "exceeds the debt *properly due*."    Open. 56 (quoting *Migani* ¶ 18 (emphasis added)).    Nor do they contest that if the fraudulent NAVs were not binding, then only minimal redemption payments were properly due, and the Liquidators may recover monies paid in excess.    *Id.* (citing Moss Decl.  II (Dkt. 1338 ¶ 17)).

It does not matter that Defendants-Appellees would not receive back their shares in the Funds.    Resp. 47–48.    Under English and BVI law, substantial restitution suffices to achieve practical justice where precise restitution is impossible.    *See Bainbridge v. Bainbridge* [2016] EWHC 898 (Ch), ¶ 21 (rescission is "fact sensitive, and permits what is practically just"); *Salt v. Stratstone Specialist Ltd.* [2015] EWCA Civ 745, ¶ 30 ("Rescission is prima facie available if 'practical justice' can be done."); *Mahoney v. Purnell* [1996] 3 All ER 61 at 88–89 (practical justice entailed award to claimant akin to damages where shares could not be restored because of company's liquidation).

Defendants-Appellees' two cited cases, Resp. 47 & n.35, are not to the contrary.    *Smith New Court Securities Ltd. v. Scrimgeour Vickers*

22

*(Asset Management) Ltd.* [1994] 1 W.L.R. 1271, 1280 ("*Smith I*") addressed rescission in dicta and is no longer good law—it was overturned by the House of Lords, predecessor to the UK Supreme Court, *see Smith New Court Sec. Ltd. v. Scrimgeour Vickers (Asset Mgmt.) Ltd.* [1996] UKHL 3 ("*Smith II*"). The House of Lords recognized that "substantial" rather than precise restitution "is normally sufficient," *Smith II* ¶ 9, and, if rescission had been properly at issue, "other, identical, shares … purchased on the market" could have been substantial restitution for shares sold, *id.*[11] *Gamatronic (UK) Ltd. v. Hamilton* [2016] EWHC 2225 (QB) acknowledged that precise restitution is not required where "it [is] not possible to return the parties to their original positions because of the particular circumstances." *Id.* ¶ 218. The court refused rescission because precise restitution was possible, but claimants refused to return their shares. *Id.* ¶ 224.[12]

---

[11] The House of Lords opined that if *Smith I* had meant that "there is no right to rescind [a] contract for the sale of quoted shares once the specific shares purchased have been sold," then "the law will need to be closely looked at hereafter." *Smith II* ¶ 9.

[12] The BVI Court's and Bankruptcy Court's discussions of *restitutio in integrum*, Resp. 47, are of little value, as both were single sentences without reasoning or citation. *Fairfield Sentry Ltd. (In Liquidation) v. Bank Julius Baer & Co.*, Nos. BVIHC (COM) 30/2010, et al. (Sept. 16,

Defendants-Appellees do not dispute that, if the NAVs are *not* binding, then counter-restitution payments of near-zero (the true value of their shares at the time of redemption) would constitute "substantial restitution." While they complain of lost recessionary rights related to their subscription payments, Resp. 47–48, they lost any such rights upon the Funds' liquidation. *See* Moss Decl. II (Dkt. 1338 ¶ 126).

## B. The BVI Business Companies Act Does Not Bar The Liquidators' Claims

Defendants-Appellees are not helped by Section 31 of the BCA, Resp. 35–37, which the Bankruptcy Court addressed in one conclusory sentence in a footnote. *Fairfield II*, 596 B.R. at 299 n.35 (Dkt. 1743 at 35 n.35).[13] Section 31(1)(e) bars a company from arguing a document issued by its representative "is not valid or not genuine." BCA § 31(1)(e).[14]

---

2011) (Dkt. 963-2 at 11 (¶ 34)); *Fairfield II*, 596 B.R. at 299 n.35 (Dkt. 1743 at 35 n.35).

[13] Some BVI Defendants presented the same argument to the ECCA, *ABN AMRO Fund Servs. (Isle of Man) 24 Nominees Ltd. v. Krys*, Nos. BVIHCMAP: 11-16, 23-28 of 2016 (Dkt. 1603 at 33 (¶ 47)) ("S. 273 Decision"), which did not address it, and allowed the Liquidators to pursue their claims in the U.S, *id.* ¶¶ 61–63.

[14] The parties do not dispute the NAVs were genuine. May 26, 2017 Decl. of Simon Mortimore, QC (Dkt. 1456 ¶ 61(c)).

"Valid" in Section 31(1)(e) means *issued by one with authority*.[15] Sections 31(b) through (d) bar a company from asserting its representatives are not who they appear to be or lack the authority they appear to have—not from providing by contract when those representatives' acts bind the company.  BCA §§ 31(1)(b)–(d).  Likewise, Section 31(1)(e) bars a company from asserting that documents issued by its representatives are not as they appear ("genuine") or that those representatives lacked authority to issue them ("valid")—not from providing by contract the conditions to make those documents binding.[16]

Section 31 is modeled on the "indoor management rule," *see* Ontario Business Corporations Act, 1982 § 19 (provision materially similar to BCA § 31, titled "[i]ndoor management rule"), which at common law

---

[15] As English and BVI law "treat[s] words as adding something rather than as mere surplusage," *S.A. Mar. et Commerciale of Geneva v. Anglo-Iranian Oil Co.* [1954] 1 W.L.R. 492 at 495, "valid" does not mean "binding."  *Cf.* BCA § 103(2) (providing when a contract "is valid *and* is binding on the company") (emphasis added); *id.* § 66(4)(a) (providing when a mortgage is "valid *and* binding on the company") (emphasis added).

[16] Section 31(2) of the BCA, which Defendants-Appellees mention in passing, Resp. 35, provides that Section 31(1) applies when a company representative acts fraudulently or forges a document.  BCA § 31(2).  It does not expand Section 31(1)'s scope or otherwise provide that a company cannot contractually provide when its documents are binding.

25

provides that a third party is "not bound to make any inquiry into the *authority* of [an] agent if compliance with the corporation's documents would have given the agent such authority." Yedidia Z. Stern, *Corporate Liability for Unauthorized Contracts—Unification of the Rules of Corporate Representation*, 9 U. Pa. J. Int'l Bus. L. 649, 657 (1987) (emphasis added).[17] Like its common law predecessor, Section 31(1)(e) is concerned only with a document issuer's authority.

Defendants-Appellees' contrary reading—that every BVI company is legally bound by every statement in every document issued on its behalf—is illogical and extreme. In Defendants-Appellees' world, if a bank employee fraudulently or mistakenly issued statements showing a fictitious $1 billion in a customer's account, the bank would be liable for that non-existent money, no matter how clearly the account documents disclaimed fraud or mistake. That is not the law. The BCA has no bearing on contractual conditions. *See* Moss Decl. II (Dkt. 1338 ¶¶ 78–80).

_____

[17] *See also Fairfield Sentry Ltd. (In Liquidation) v. Bank Julius Baer & Co.*, Nos. BVIHC (COM) 30/2010, et al. (Apr. 20, 2011) (Dkt. 925-14 ¶ 17) ("[I]nvestors must have been entitled under the internal management rule to assume that the officers and agents of Sentry had the *authority* to carry out the tasks that they performed." (emphasis added)).

Defendants-Appellees' few arguments regarding the BCA are non-sequiturs. They falsely assert that the Liquidators argue the Articles "contracted around" the BCA's statutory requirements, Resp. 36; in fact, the Liquidators argue the Articles contracted around a common law presumption, Open. 54–55; *cf. id.* at 56 (Liquidators' actual arguments regarding the BCA). Defendants-Appellees also insist the Articles must be interpreted against the statutory "backdrop" of the BCA, Resp. 37 (citing 5 Corbin on Contracts § 24.26). But that principle applies only to "laws which subsist at the time and place of the making of a contract." 5 Corbin on Contracts § 24.26 (quotation omitted), and the BCA, enacted in 2004, was not in force when the Articles were executed in 2003, Articles (Dkt. 925-6).[18]

### C.   Collateral Estoppel Does Not Bar Litigation Of Citco's Bad Faith Here, As That Issue Was Not Previously Litigated Or Decided

The Bankruptcy Court correctly ruled that the Liquidators' Common Law and Contract Claims are not collaterally estopped under BVI or U.S. law. *Fairfield II*, 596 B.R. at 292–93 (Dkt. 1743 at 22–24).

---

[18] The BCA's predecessor, in force when the Articles were entered in 2003, did not include a provision similar to Section 31. *See generally* International Business Companies Act (Cap. 291).

BVI preclusion law governs here.  *See* Section I of Plaintiffs-Appellants' Resp. to Suppl. Br. on *Res Judicata* (filed in consolidated appeal contemporaneously herewith); *contra* Resp. 48–52.  Because Defendants-Appellees did not make an argument for collateral estoppel under BVI law, they waived it.[19]  *Chabad Lubavitch of Litchfield Cty. v. Litchfield Historic Dist. Comm'n*, 768 F.3d 183, 200 (2d Cir. 2014) ("Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal.").

Even if U.S. preclusion law applied, it requires that "the issue [have been] actually litigated *and decided.*"  *Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006) (emphasis added).  Defendants-Appellees do not dispute that the question of Citco's bad faith "was not actually decided" in the BVI proceedings.  *Fairfield II*, 596 B.R. at 293 (Dkt. 1743 at 24).[20]

---

[19] Defendants-Appellees' collateral estoppel argument would fail under BVI law, which requires mutuality of parties, Moss Decl. II (Dkt. 1338 ¶¶ 35–36), as they do not explain whether or to what extent the U.S. Redeemer Actions and BVI Redeemer Actions are between the same parties or their privies.

[20] Although in *Migani* the Privy Council presumed the NAV certificates were given in good faith, *see Weavering II* ¶ 24; S. 273 Decision ¶ 61(iii), such presumptions have no collateral estoppel effect.  *E.g.*, *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 398–99 (5th Cir. 2004); *Laguna Hermosa Corp. v. United States*, 671 F.3d 1284, 1288–89 (Fed. Cir. 2012).

Accordingly, the Bankruptcy Court was correct in holding that the Liquidators were not collaterally estopped.  *See id.*

Contrary to Defendants-Appellees' assertions, Resp. 49–52, U.S. collateral estoppel law "does not prevent a litigant from raising, in a later proceeding, an issue that he could have, but did not, raise in the first proceeding." *Leather v. Eyck*, 180 F.3d 420, 426 (2d Cir. 1999).[21]  In any event, the Liquidators could not have raised Citco's bad faith during the BVI Redeemer Actions preliminary issues proceedings that began in 2011. *Contra* Resp. 50–52. Alleging bad faith under BVI law "is a serious matter which requires counsel as a matter of professional conduct to have a proper basis on which to make the allegation," Moss Decl. II (Dkt. 1338 ¶ 57(a)), and the *Anwar* allegations Defendants-Appellees cite were vague, and conclusory.  Resp. 19–20 & n.24 (citing *Anwar v. Fairfield Greenwich Ltd.*, No. 09-cv-00118 (S.D.N.Y. Apr. 24, 2009) (Dkt. 116 ¶¶ 268(d), 270); *id.* (Sept. 29. 2009) (Dkt. 273 ¶¶ 336–339)).  The Liquidators

---

[21] While Defendants-Appellees cite 30-year old D.C. Circuit cases to the supposed contrary, Resp. 49–50, recent D.C. Circuit cases confirm that whether a party "could have" raised issues is relevant to only *res judicata*, not collateral estoppel.  *See, e.g.*, *Cal. Cmtys. Against Toxics v. Envtl. Prot. Agency*, 928 F.3d 1041, 1051–52 (D.C. Cir. 2019).

could not simply copy them; they had to investigate,[22] and could not verify Citco's bad faith conduct until the Summer of 2014.  Open. 23; Hare Decl. (Dkt. 925 ¶¶ 56–57).

Defendants-Appellees disingenuously assert that the Liquidators "chose not to respond" to PI Defendants' argument that the Funds' directors' good faith was irrelevant.  Resp. 52.  But the Liquidators had no reason to argue the effect of hypothetical factual allegations they could not make under the rules of professional conduct.  Rather, the Liquidators opposed entirely the preliminary issues proceedings—which were limited to legal issues, Hare Decl. (Dkt. 925 ¶ 48)—because there were open factual issues, April 14, 2011 Fairfield Sentry BVI Court Skeleton Argument (Dkt. 925-8 ¶ 16), which those proceedings could not address, Hare Decl. (Dkt. 925 ¶¶ 26, 41).  Defendants-Appellees cannot use issues that were not raised, need not have been raised, and could not have been raised in the BVI to collaterally estop the Liquidators' claims here.

---

[22] *Cf. Homeward Residential, Inc. v. Sand Canyon Corp.*, 2014 WL 12791757, at *7 (S.D.N.Y. Mar. 31, 2014) (plaintiff may rely on unverified allegations from publicly filed complaints if "combined with material the plaintiff has investigated personally that lends credence to the borrowed allegations"), *vacated in part on other grounds*, 2014 WL 4680849 (S.D.N.Y. Sept. 17, 2014).

## IV.   THIS COURT SHOULD REVERSE THE BANKRUPTCY COURT IN FULL

Defendants-Appellees do not dispute that, if this Court agrees the Common Law and Contract Claims were wrongly dismissed, it should reverse the Bankruptcy Court's denial of leave to amend, not vacate and remand.  Open. 38–39.  They also do not dispute that, once this Court reverses, the motions to dismiss at issue will be moot, Open. 60–61, so the portion of the decision granting those motions too should be reversed. While this Court's reversal would decide the law and sufficiency of the pleadings for the issues addressed in this appeal, it would *not* moot *other* motions to dismiss "currently being litigated in the Bankruptcy Court." *Contra* Resp. 52–53.

## CONCLUSION

For the reasons provided above and in the Liquidators' opening brief, this Court should (1) reverse the Bankruptcy Court's decision to the extent it denied leave to amend the Common Law Claims and the Contract Claims; (2) vacate the decision to the extent it dismissed any of those claims; and (3) remand with instructions that the Bankruptcy Court deny the motions to dismiss those claims as moot.

Dated: New York, NY
        April 23, 2020                    Respectfully submitted,

                                   By:   */s/   David Elsberg*
                                         SELENDY & GAY PLLC
                                         David Elsberg
                                         Caitlin J. Halligan
                                         Andrew R. Dunlap
                                         Lena Konanova
                                         Jordan Garman
                                         1290 Avenue of the Americas
                                         New York, NY 10104
                                         Telephone: 212-390-9000
                                         delsberg@selendygay.com
                                         challigan@selendygay.com
                                         adunlap@selendygay.com
                                         lkonanova@selendygay.com
                                         jgarman@selendygay.com

                                         -and-

                                         BROWN RUDNICK LLP
                                         David J. Molton
                                         Marek P. Krzyzowski
                                         Seven Times Square
                                         New York, NY 10036
                                         Telephone: 212-209-4800
                                         dmolton@brownrudnick.com
                                         mkrzyzowski@brownrudnick.com

                                         *Attorneys for Plaintiffs-*
                                         *Appellants Foreign*
                                         *Representatives*

## **CERTIFICATE OF COMPLIANCE**

This document complies with the type-volume limitations of Federal Rule of Bankruptcy Procedure 8015(a)(7)(B) and the Court's Individual Rules & Practices in Civil Cases 5(c) because, excluding the parts of the document exempted by Federal Rule of Bankruptcy Procedure 8015(g), this document contains 6500 words.

This document complies with the typeface requirements of Federal Rule of Bankruptcy Procedure 8015(a)(5) and the type-style requirements of Federal Rule of Bankruptcy Procedure 8015(a)(6) because this document has been prepared in a proportionally spaced typeface using Word for Office 365 64-bit and is set in Century Schoolbook, 14-point font.

Date: April 23, 2020                    Respectfully submitted,

By: */s/   David Elsberg*
    SELENDY & GAY PLLC
    David Elsberg
    1290 Avenue of the Americas
    New York, NY 10104
    Telephone: 212-390-9000
    delsberg@selendygay.com

    *Attorneys for Plaintiffs-Appellants*
    *Foreign Representatives*